# WHITE *v.* LEOVY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 232. Submitted April 3, 1899. — Decided April 24, 1899.

From the statement of this case made by the Supreme Court of Louisiana in its opinion, quoted in the opinion of this court, it is manifest that no Federal question was passed upon by that court, but that its decision was put upon an independent ground, involving no Federal question, and of itself sufficient to support the judgment below; and this court therefore dismisses the writ of error.

THE case is stated in the opinion.

*Mr. E. Howard McCaleb* for plaintiff in error.

*Mr. Alexander Porter Morse, Mr. Henry J. Leovy* and *Mr. Victor Leovy* for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This is an action of jactitation or slander of title, and is here on error from the Supreme Court of the State of Louisiana. A motion is made to dismiss for want of jurisdiction in this court on the ground that no Federal question was decided. We think the motion should be granted.

Both parties, who were respectively plaintiff and defendants in the court below, derive title from the State of Louisiana by patents which were issued in execution of the grant to it of swamp and overflowed lands. Plaintiff's patent was prior in time to that of defendants, and it is claimed that by the issue of the latter the State "has attempted to impair the obligations of the contract between the State of Louisiana and the said Robert M. White, plaintiff herein, and deprive him of his property without due process of law, in violation of the Constitution and laws of the United States."

The title of the State must be assumed, and the contest is by which patent that title passed. It seems almost inevitable

that the questions hence arising would be state ones, and that the decision of the Supreme Court was confined to such a question is manifest from its opinion.    49 La. Ann. 1660.

After defining the action under the Louisiana laws, and stating upon whom the burden of establishing title devolved, it said:

" The description of the land which was purchased by the plaintiff, which was evidenced by the patent that issued to the plaintiff, is of the following tenor, viz. : ' All the unsurveyed marsh west of lots fronting on the right bank of the Mississippi, except section No. sixteen (16), in township twenty-two (22) south, of range thirty-one (31) east, in the southeastern west of the river land district, containing thirty-eight hundred and forty (3840) acres, according to the official plat of the survey of said lands in the state land office.'

" The number of the patent is 4058, and it states that the purchase was made with certificate No. 2251, N. S. L."

The plaintiff's petition, original and supplemental, contained the same description.

" The answer of the defendant H. J. Leovy," the opinion further says, " is to the effect that the land claimed by the plaintiff and called for by his patent ' was entered according to an official plat or survey made by G. F. Connelly in 1836, [and]   .  .  .   was all within a distance of less than two miles of the Mississippi River, and all territory to the west of that was at the date of that survey, and by the plat by which White claims to have bought, West Bay.

' That a few years after Connelly made said survey the Jump Outlet broke through, and the accumulation on the seaward side of said marsh and in said bay gradually raised the bed of said bay until the whole of said West Bay became marsh land, connecting with swamp land to the westward, and at the time of said lands being transferred to the State, in 1849 and 1850, by Congress it was not a navigable bay or part of the sea.'

" The answer then charges that the plaintiff, well knowing all these facts, and endeavoring to perpetrate a fraud upon the State, ' entered the lands originally allotted by Connelly, and

under his patent 4058 is endeavoring to claim over sixteen thousand (16,000) more acres in said township' than he is entitled to claim thereunder, and by 'a malicious suit now seeks to cast a cloud upon the title of others who have entered the western lands in said township . . . honestly and according to law, and who are in the peaceable and undisturbed possession of the same.'"

The answer of the other defendant was similar. And further —

"In *limine litis* plaintiff's counsel filed an exception and motion to strike out a portion of the defendant's answers on the ground that the official plat of survey of G. F. Connelly, United States surveyor, made in 1836, and on which his patent was based, cannot be questioned or impeached by the defendant, and this court is wholly without jurisdiction to determine whether same is or not erroneous. And that the said patent cannot be questioned or impeached by the defendant for fraud or error.

"That the United States Government, as the owner of the sea marsh adjacent to the seashore and to West Bay, 'acquired all the alluvian made by accretion to said lands between the years 1836 and 1850 ; and when said lands were granted by the United States Government to the State of Louisiana,' same passed to the State by the granting act of Congress, and that same passed to the plaintiff as patentee thereof, and 'that he acquired all of said lands as well as the accretions which were added thereto, as they were at the time they were granted by the United States to the State of Louisiana,' said granting act passing a fee simple title *in præsenti* to the State, not only as the land was at the time of the survey by Connelly in 1836, but as it was at the date of the grant, and that the whole was acquired by the plaintiff as patentee.

"His additional representation is that the plaintiff as patentee 'acquired *all of said lands* in township No. 22 south, range No. 31 east, on the southeastern west of the river land district, *according to the official survey of said lands in the state land office, as they were at the time they were granted by the United States* to the State of Louisiana.'"

The decision of the district court was in favor of the motion, and after comment on the ruling the Supreme Court said:

"Reduced to a last analysis, the pleadings present for our consideration and decision a purely petitory action, in which the defendant holds the affirmative side of the controversy and is bound to succeed on the strength of his own title, and in deciding the question of title we are to determine whether the patents which the State issued to H. J. Leovy, in 1893, reflect a title which is superior and paramount to the patent which the State issued to the plaintiff in 1890, to the extent that they conflict.

"This controversy is not so much with regard to the character or strength of the respective parties as it is with regard to the area or domain which the State actually and really conveyed to the plaintiff; for it is quite true and cannot be denied that the State was wholly without power to convey to the defendant H. J. Leovy any land in 1893 which she had previously sold to the plaintiff in 1890, without trenching upon the issues of error or fraud which were excluded from consideration. In other words, we are to determine from the evidence before us whether the plaintiff's patent covers and includes all the land in township twenty-two south, of range thirty-one east, in the southeastern land district west of the Mississippi River; for if it does, in fact, the patents which were subsequently issued to the defendant H. J. Leovy do not reflect a paramount title thereto."

The court then gave elaborate consideration to the views of the district court, expressing its dissent from them; also at great length reviewed the evidence and the land laws of the State and the descriptions of the respective patents, and concluded as follows:

"As, in our opinion, this controversy is quite similar to the one presented in *Buras* v. *O'Brien* — that is to say, one for the determination of the area of sea marsh which is covered by a state patent — our conclusion is that the plaintiff's patent 4058 does not extend to nor include the land which is called for by the patents which were subsequently issued by

the State to the defendant H. J. Leovy, and that consequently there is no conflict between them.

"Under the jurisprudence and statutes of this State governing the sale and entry of swamp and marsh lands, we think it our duty to consider all the provisions and recitals of patents issued therefor and to give same effect according to their tenor; and thus considering the patent of the plaintiff, we regard it as evidencing a sale by measure and not by estimation of quantity. We consider the words thereof 'containing 3840 acres' as limiting the words preceding, 'all the unsurveyed marsh west of lots fronting on the right bank of the Mississippi,' and that the reference made therein to 'the official plat of the survey of said lands in the state land office' was intended to verify and confirm the statement as to the character and extent of the area of land which was actually conveyed to the patentee.

"We are of the opinion that inasmuch as the plaintiff's patent 4058 calls for 'all the unsurveyed marsh west of lots fronting on the Mississippi, except section sixteen in township twenty-two,' he is not entitled to survey, select and appropriate all the dry land or swamp land above overflow in said township in order to make out the quantity of '3840 acres' he purchased.

"We are of opinion that inasmuch as the patent conveys 'all the unsurveyed marsh west of the lots fronting on the Mississippi,' those lots must be taken as the initial point from which the area is to be computed, same being the only fixed and definite boundary mentioned in the patent.

"Thus considering the law and the evidence, we are of opinion that there should be judgment in favor of the defendant H. J. Leovy maintaining his patents as reflecting the paramount title to the lands which are therein described, and perpetuating his writ of injunction."

It is manifest no Federal question was passed on by the court. Its decision was put upon an independent ground involving no Federal question and of itself sufficient to support the judgment. It merely determined the extent of the grant to the State, and, interpreting the contending patents

as conveyances, decided that the lands described in that of plaintiff did not embrace the lands in controversy, and that the lands described in that of defendant did embrace them. This was but the interpretation of written instruments, and if it were even apparent to us to be wrong, which we cannot say, we should nevertheless be without power to review it.

In *Remington Paper Co.* v. *Watson*, 173 U. S. 443, we had occasion to repeat and affirm the rule announced in *Eustis* v. *Bolles*, 150 U. S. 361, 370, "that when we find it unnecessary to decide any Federal question, and when the state court has based its decision on a local or state question, our logical course is to dismiss the writ of error."

<em>The writ of error is dismissed.</em>